IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

MARTIN J. WALSH,                              )
                                              )
                    Plaintiff,                )      2:19-CV-00496-CCW
                                              )
        v.                                    )
                                              )
FUSION JAPANESE STEAKHOUSE, INC.,             )
FUSION JAPANESE STEAKHOUSE, INC.,             )
Z&S INTERNATIONAL CUISINE, INC.,              )
YUAN ZHENG XIAO, CHRISTINE XIAO,              )
                                              )
                    Defendants.               )
                                              )
                                              )

**MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTION FOR PARTIAL
SUMMARY JUDGMENT AND DENYING DEFENDANTS' MOTION FOR PARTIAL
SUMMARY JUDGMENT**

On April 30, 2019, then-Secretary of the United States Department of Labor R. Alexander

Acosta filed this action under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201

*et seq.* (FLSA). In essence, the Complaint alleges that Defendants, who own and run multiple

Japanese Steakhouse restaurants, willfully failed to pay their kitchen employees an overtime

premium, and failed make and keep appropriate records, in violation of the FLSA. Defendants are

Fusion Japanese Steakhouse, Inc., a Pennsylvania corporation, ("Fusion Washington"); Fusion

Japanese Steakhouse Inc., a West Virginia corporation, ("Fusion Vienna"); Z&S International

Cuisine, Inc. d/b/a Fusion Steakhouse of Wheeling ("Fusion Triadelphia") (collectively "the

Restaurant Defendants"); and two individuals, Yuan Zheng Xiao and Christine Xiao (the

"Individual Defendants"). Before the Court are Plaintiff's Motion for Partial Summary Judgment,

ECF No. 59, and Defendants' Motion for Partial Summary Judgment, ECF No. 61. The cross

motions have been fully briefed and are ripe for review.

## I. Factual Background

The Restaurant Defendants, located in Triadelphia and Vienna, West Virginia, and Washington, Pennsylvania, respectively, are each restaurants that use the "Fusion Japanese Steak House" name. ECF No. 72 at ¶¶ 1–4, 7. Defendant Yuan Zheng Xiao is president and co-owner of each of the Restaurant Defendants, ECF No. 72 at ¶ 7. He supervises the managers and oversees the general operations and performance of the Restaurant Defendants. *Id.* at ¶ 11. Defendant Christine Xiao is the manager and a shareholder of Fusion Vienna, ECF No. 72 at ¶ 22; ECF No. 59-3 at ¶ 12. She is married to Defendant Yuan Zheng Xiao. ECF No. 59-6 at 27:6–12.

### A. Pay Practices and Record Keeping

In this case, Plaintiff, the Secretary of the United States Department of Labor, seeks to redress violations of the FLSA that Defendants allegedly committed with respect to pay practices and recordkeeping affecting Defendants' kitchen staff between October 18, 2014 through the present. ECF No. 60 at 3. During the relevant time period, the Restaurant Defendants employed two general categories of workers: front of the house employees (i.e. servers, bussers, bartenders, and hosts) and kitchen employees (i.e. hibachi chefs, sushi chefs, dishwashers, kitchen helpers, and cooks. ECF No. 72 at ¶¶ 34, 38; ECF No. 59-7 at 2. The front of the house employees are all English-speaking and are usually American citizens. ECF No. 72 at ¶ 35. Defendants paid front of the house employees by the hour and required them to clock in and out for their shifts. ECF No. 72 at ¶¶ 36–37. Unlike the front of the house workers, Defendants calculated payment to kitchen employees using a day unit or day rate. ECF No. 72 at ¶ 50. For example, until at least 2017, a kitchen employee paid $120 per day would get paid $360 for three days of work, $600 for five days of work, and $720 for six days of work. ECF No. 72 at ¶ 55. Similarly, until at least 2017, a kitchen employee paid $120 per day would only get paid half of their day rate (i.e. $60) if

they worked only half of a day. *Id.* Defendants claim that "[t]he total payment for each period was intended to cover all hours kitchen employees worked in a workday, including lunch and dinner shifts, and any overtime hours worked." ECF No. 72 at ¶ 52.

It is undisputed that before 2017, Defendants did not require kitchen employees to clock in and out for their shifts or for meals or breaks. ECF No. 72 at ¶¶ 47, 68. Until at least December 2017, Defendants did not keep records of kitchen employees' daily start and stop times. ECF No. 72 at ¶ 69. Until at least 2017, Defendants paid each of their kitchen employees according to the number of days the employee worked, regardless of the number of hours in each day. ECF No. 72 at ¶¶ 53, 56. Defendants paid their kitchen employees twice per month in an amount calculated by multiplying the employee's day rate by the number of days the employee worked. ECF No. 72 at ¶ 54. Finally, until at least 2017, Defendants did not keep records of the addresses, of dates of employment for Hispanic workers and Defendants did not keep records of the last names of Mexican or Hispanic workers because Defendants believed their names were too long and difficult to remember. ECF No. 72 at ¶¶ 72–73.

During the relevant time period for this case, beginning on October 18, 2014, Yuan Zheng Xiao gave the Restaurants' managers his permission and opinion on how much to pay kitchen employees, and required the managers to maintain records of cash payments to kitchen employees. ECF No. 72 at ¶¶ 15–17. With Yuan Zheng Xiao's approval, the managers of the Restaurant Defendants distributed cash payments to kitchen employees in envelopes; but, Defendants did not maintain records of these cash payments. ECF No. 72 at ¶ 77–78. For kitchen employees who were paid by both cash and check, Defendants' records reflect only the cash portions of payments. ECF No. 72 at ¶ 81. The parties refer to Defendants' written records of the cash payments to kitchen employees as "the 'Cash Logs.'" *See e.g.*, ECF No. 72 at ¶ 82. The Cash Logs reflect

twice-monthly payments. ECF No. 72 at ¶ 83. They contain a column for identifying employee names, but most employees are listed by first or nickname only. *Id.* at ¶ 84. The Cash Logs contain a column for "salary" amounts, but many of these salary fields are either blank or incomplete. *Id.* The Cash Logs contain a field for employees' signatures, but some signatures are missing and many pages have signatures with no salary amounts listed. *Id.* In contrast to the lack of recordkeeping for the kitchen employees, Defendant kept records that complied with the FLSA for front of the house employees, including paying them by the hour, and consistently requiring them to clock in and out for shifts and breaks. ECF No. 72 at ¶¶ 35–37.

## B. Prior DOL Investigations

Between 2010 and 2012, the Wage and Hour Division of the United States Department of Labor investigated each of the three Restaurant Defendants for potential violations of the FLSA. ECF No. 72 at ¶¶ 20, 91, 99, 112. Yuan Zheng Xiao was the Wage and Hour Division's primary contact for the Restaurant Defendants for each of those three investigations. ECF No. 72 at ¶ 20. As president, Yuan Zheng Xiao hires and sets the pay rates for the general managers of each of the Restaurant Defendants. ECF No. 72 at ¶¶ 9–10. He supervises the managers and oversees the general operations and performance of all the restaurants. *Id.* at ¶ 11.

### 1. The 2010 Fusion Triadelphia Investigation

In August 2010, the Wage and Hour Division investigated Fusion Triadelphia for violations of the FLSA from August 2009 through September 2010. *Id.* at ¶ 91. It is undisputed that the 2010 Triadelphia investigation revealed that Defendants did not pay their kitchen employees the required overtime when they worked more than forty hours in a week; instead, Defendants paid their non-exempt hourly employees their straight-time rates for all hours worked, including overtime. *Id.* at ¶ 92. Defendant Yuan Zheng Xiao agreed to pay back wages in connection with

the 2010 Triadelphia investigation. *Id.* at ¶ 98. He also signed and returned a letter from the Wage and Hour Division that asked him to confirm his understanding that the investigation revealed violations of the overtime and recordkeeping requirements of the FLSA and to confirm that Defendants would comply with the FLSA moving forward. ECF No. 72 at ¶ 97; ECF No. 59-8 at 5–7.

### 2. The 2011 Fusion Washington Investigation

In September 2011, the Wage and Hour Division investigated Fusion Washington for violations of the FLSA during the period of January 2011 through December 2011. ECF No. 72 at ¶ 112. The investigation revealed that Defendants did not pay certain employees the required overtime premium when they worked more than forty hours in a week, that Defendants paid non-exempt employees' salaries, and did not keep records of the hours worked each day for non-exempt employees such as dishwashers. ECF No. 72 at ¶ 114. The investigation revealed that Defendants owed thousands of dollars in back wages to its employees. *Id.* at ¶ 115. At the end of the 2011 Fusion Washington investigation, Fusion Washington and Yuan Zheng Xiao agreed to comply with all of the provisions of the FLSA. *Id.* at ¶ 117. Specifically, they "agreed to keep accurate records of all employees' hours worked, pay the additional half-time premium for hours worked over forty in a week to all non-exempt employees, and to pay in full back wages" owed. ECF No. 72 at ¶ 117. Yuan Zheng Xiao signed and returned a letter from the Wage and Hour Division that explained the results of the 2011 Fusion Washington investigation, asked him to sign and return the letter to confirm his understanding, and which enclosed a copy of the FLSA's "Handy Reference Guide to the FLSA." ECF No. 72 at ¶ 120; ECF No. 59-0 at 43.

### 3. The 2012 Fusion Vienna Investigation

In February 2012, the Wage and Hour Division investigated Fusion Vienna for violations of the FLSA during the period of March 2010 through March 2012. *Id.* at ¶ 99. Plaintiff states that the investigation revealed that Defendants did not pay certain employees the required overtime and failed to maintain records of non-exempt employees' hours. *Id.* at ¶ 100–01. Defendants deny Plaintiff's statement that the 2012 Fusion Vienna investigation revealed violations, but the only support for Defendants' denial is Yuan Zheng Xiao's deposition testimony that he "has no recollection of [the outcome of the 2012 Fusion Vienna investigation]." *Id.* Nevertheless, it is undisputed that Yuan Zheng Xiao paid back wages to kitchen employees as a result of the 2012 Fusion Vienna investigation. *Id.* at ¶ 108. It is also undisputed that Yuan Zheng Xiao signed and returned a letter from the Wage and Hour Division that explained the results of the 2012 Fusion Vienna investigation, asked Yuan Zheng Xiao to sign and return the letter to confirm his understanding, and enclosed a copy of the FLSA's "Handy Reference Guide to the FLSA." ECF No. 72 at ¶ 110; ECF No. 59-9 at 8.

## II. Legal Standard

To prevail on a motion for summary judgment, the moving party must establish that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A factual dispute is 'genuine' if the 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Razak v. Uber Techs., Inc.,* 951 F.3d 137, 144 (3d Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 248, (1986)). "A factual dispute is 'material' if it 'might affect the outcome of the suit under the governing law.'" *Id.* (quoting *Anderson*, 477 U.S. at 248). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *NAACP*

*v. N. Hudson Reg'l Fire & Rescue,* 665 F.3d 464, 475 (3d Cir. 2011) (quoting *Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

The burden to establish that there is no genuine dispute as to any material fact "remains with 'the moving party regardless of which party would have the burden of persuasion at trial.'" *Aman v. Cort Furniture Rental Corp.*, 85 F.3d 1074, 1080 (3d Cir. 1996) (quoting *Chipollini v. Spencer Gifts, Inc.*, 814 F.2d 893, 896 (3d Cir. 1987)). That said, "[i]f the non-moving party bears the burden of persuasion at trial, 'the moving party may meet its burden on summary judgment by showing that the nonmoving party's evidence is insufficient to carry that burden.'" *Kaucher v. County of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (quoting *Wetzel v. Tucker*, 139 F.3d 380, 383 n.2 (3d Cir. 1998)).

Once the moving party has carried its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts…Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 586–87. Thus, while "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor," *Anderson*, 477 U.S. at 255, "Rule 56(e)…requires the nonmoving party to go beyond the pleadings" and point to "'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986) (citation omitted). But, while the court must "view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor…to prevail on a motion for summary judgment, the non-moving party must present more than a mere scintilla of evidence; there must be evidence on which the jury could reasonably find for the [non-movant]." *Burton v. Teleflex Inc.*, 707 F.3d 417, 425 (3d Cir. 2013) (internal citations omitted).

Where, as here, "cross-motions for summary judgment are filed, 'the court must rule on each party's motion on an individual and separate basis, determining, for each side, whether a judgment may be entered in accordance with the Rule 56 standard.'" *Reynolds v. Chesapeake & Del. Brewing Holdings, LLC*, Civil Action No. 19-2184, 2020 U.S. Dist. LEXIS 83633, at *6 (E.D. Pa. May 12, 2020) (quoting *Auto-Owners Ins. Co. v. Stevens & Ricci Inc.*, 835 F.3d 388, 402 (3d Cir. 2016)).

### III. Plaintiff's Partial Motion for Partial Summary Judgment will be Granted in Full

Plaintiff requests summary judgment on all issues in the case except the amount of damages. Specially, Plaintiff moves for summary judgment on seven points: (1) that the Restaurant Defendants are "covered enterprises" subject to the FLSA; (2) that the Individual Defendants, Yuan Zheng Xiao and Christine Xiao, are "employers" under § 3(d) of the FLSA; (3) that Defendants violated § 7(a) of the FLSA by failing to pay their employees statutory overtime premiums; (4) that Defendants violated § 11(c) of the FLSA by failing to make, keep, and preserve the employment records of their kitchen employees; (5) that Defendants willfully violated the FLSA's overtime provisions; (6) that Plaintiff is entitled to liquidated damages under § 16(c) of the FLSA; and (7) that the Court should enjoin Defendants from future FLSA violations. *See* ECF No. 59. The Court will address each argument in turn.

### A. The Fusion Restaurants are a Covered Enterprise Subject to the FLSA

Plaintiff seeks summary judgment that the Restaurant Defendants are a covered enterprise that is subject to the FLSA's overtime provisions as a single enterprise. ECF No. 60 at 5–6. The FLSA's overtime provisions apply to enterprises that are: (1) "engaged in commerce or in the production of goods for commerce," 29 U.S.C. §§ 203(s)(1), 207(a); (2) that "has employees engaged in commerce or in the production of goods for commerce, or employees handling, selling,

or otherwise working on goods or materials that have been moved or produced for commerce by any person," 29 U.S.C. § 203(s)(1)(A); and (3) generates at least $50,000 in gross annual sales, 29 U.S.C. § 203(a)(1)(A)(i–ii). *See also*, *Marhsall v. Brunner*, 668 F.2d 748, 751–52 (3d Cir. 1982)). The FLSA defines "enterprise" to include "the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments." 29 U.S.C. § 203(r)(1).

It is uncontested that the Restaurant Defendants share the same "Fusion Japanese Steak House" name, logo, and restaurant formats, and are each owned in part by Yuan Zheng Xiao. ECF No. 72 at ¶¶ 4, 7. It is uncontested that the Restaurant Defendants are restaurants that generate between $1.2 million and $2 million in annual gross sales each. ECF No. 72 at ¶ 5. In addition, Defendants admitted in their written discovery responses that the Restaurant Defendants are a covered enterprise subject to the FLSA's overtime provisions, ECF No. 72 at ¶ 6; ECF No. 59-4 at 3–5, and Defendants' opposition to Plaintiff's Motion for Partial Summary Judgment does not address or contest that Defendants constitute a single enterprise for FLSA purposes. *See generally*, ECF No. 71; ECF No. 72. Therefore, there is no genuine question of material fact that the Restaurant Defendants are a covered enterprise that is subject to the FLSA's overtime provisions, and Plaintiff is entitled to summary judgment on this issue.

**B.    The Individual Defendants are "Employers" Under Section 3(d) of the FLSA**

Plaintiff seeks summary judgment that both of the Individual Defendants are "employers" under § 3(d) of the FLSA. ECF No. 60 at 6–9. In discovery, Plaintiff served Defendants with requests for admission that during the relevant time period, the Individual Defendants were "employers" under § 3(d) of the FLSA. ECF No. 59-4 at ¶¶ 12–13. In their responses to the

requests for admission, Defendants denied that the Individual Defendants are employers under § 3(d).  ECF No. 59-4 at ¶¶12–13.  However, Defendants' opposition to Plaintiff's Motion for Partial Summary Judgment did not address or contest this issue.  *See generally*, ECF No. 71;  ECF No. 72.  A party that fails to address an argument in its brief in opposition to a motion for summary judgment waives that argument.  *Aetna Health Inc. v. Davila*, 542 U.S. 200, 212 n.2 (2004);  *Travitz v. Ne. Dep't ILGWU Health & Welfare* Fund, 13 F.3d 604, 711 (3d Cir. 1994);  *Fischer v. G4S Secure Sols USA, Inc.*, Civil Action No. 10-6792(JBS/AMD), 2014 U.S. Dist. LEXIS 86139, at *46 (D.N.J. June 25, 2014).

In addition to Defendants' waiver of their argument that the Individual Defendants are not "employers" under § 3(d) of the FLSA, based on the record before the Court, there can be no genuine question that the Individual Defendants are indeed "employers" under § 3(d).  In deciding whether an individual qualifies as an "employer" under § 3(d) of the FLSA, courts look to the following non-exclusive factors:  whether the purported employer has:  (1) the authority to hire and fire employees;  (2) the authority to promulgate work rules and assignments, and set conditions of employment, including compensation, benefits, and hours;   (3) day-to-day supervision, including employee discipline;  and (4) control of employee records, including payroll, insurance, taxes, and the like.  *In re Enter. Rent-A-Car Wage & Hour Empl. Practices Litig.*, 683 F.3d 462, 469 (3d Cir. 2012).

Based on the following undisputed facts, the Individual Defendants meet all four of these factors.  Yuan Zheng Xiao hires the general managers of the Restaurant Defendants, ECF No. 72 at ¶ 9;  he sets the pay rates of the managers, and gives directions and permission to managers regarding how to determine and calculate the pay rate for kitchen employees *id.* at ¶¶ 10, 16;  he supervises the managers and oversees the general operations and performance of the restaurants,

*id.* at ¶ 11;  and he distributes check payments to kitchen employees and required the managers to maintain records of cash payments to kitchen employees,  *id.* at ¶¶ 17–18.  With respect to Fusion Vienna, Christine Xiao is responsible for:  hiring and firing employees, *id.* at ¶ 23;  disciplining, assigning, and scheduling employees,  *id.*;  supervising work, *id.*;  and calculating and completing records of day rate kitchen employees' pay each pay period, *id.* at ¶ 28.  The aforementioned factors are a starting point for a district court's analysis, and the court must consider the "total employment situation and economic realities of the work relationship."  *In re Enter. Rent-A-Car*, 683 F.3d at 469 (quoting *Bonnette v. Cal. Health & Welfare Agency*, 704 F.2d 1465, 1470 (9th Cir. 1983)). However, the FLSA's definition of "employer" is "the broadest definition that has ever been included in any one Act," *In re Enter. Rent-A*-Car, 683 F.3d at 467–48 (quoting *United States v. Rosenwasser*, 323 U.S. 360, 363 n.3 (1945)), and here, the record is replete with facts that the Individual Defendants are "employers" for purposes of § 3(d), such that no reasonable jury could conclude otherwise.  *E.g.*, ECF No. 57-7 at ¶ 12 (Defendant Christine Xiao was a point of contact for the Plaintiff's investigation of Fusion Vienna);  ECF No. 57-7 at 87 (personal interview statement of a Fusion Vienna cook identifying Yuan Zheng Xiao as his supervisor and Christine Xiao as the general manager and person who pays him);  ECF No. 57-5 at 95 (personal interview statement of Fusion Vienna bus boy identifying Christine Xiao as his direct boss and noting her familial relationship to Yuan Zheng Xiao);  ECF No. 72 at ¶ 27 (Christine Xiao and her husband were responsible during the relevant times for transmitting payroll information for Fusion Vienna to the Defendants' payroll accountant.).

For these reasons, there is no genuine issue of fact that the Individual Defendants are "employers" under section § 3(d) of the FLSA, and Plaintiff is entitled to summary judgment on this issue.

**C.    Defendants Failed to Pay Overtime Premiums Required by Section 7(a) of the FLSA**

Plaintiff seeks summary judgment that Defendants violated § 7(a) of the FLSA by failing to pay their kitchen employees the statutory overtime premiums.  ECF No. 60 at 9.  Defendants contend that they properly paid their employees consistent with the FLSA.  ECF No. 71 at 4–5.

Section 7(a) of the FLSA requires employers to either (1) limit their employees' workweek to 40 hours or (2) pay their employees an overtime premium—calculated at 1.5 times the employees' standard rate of pay—for hours over 40 in a workweek.  29 U.S.C. § 207(a).

According to Plaintiff, Defendants' kitchen employees worked an average of 57.4 hours per week and were not paid an overtime premium for the hours over 40 worked in a week.  ECF No. 60 at 10–11.  According to Defendants, only some of the Defendants' kitchen employees worked more than 40 hours per week, and those who did were paid an overtime premium.  ECF No. 71 at 7.  Defendants admit that they pay their employees twice per month in a lump sum regardless of how many hours they worked in those two weeks;  Defendants argue that "[i]n Chinese culture, a traditional pay period is a month, instead of two weeks.  Thus, most Chinese immigrants and kitchen workers do not appreciate a two-week payment period, and always prefer to do all calculation based on month."  ECF No. 71 at 7–8;  ECF No. 72 at ¶ 59.  Defendants posit that "[t]he whole payment is intended to cover all the minimum wages and the overtime premium for each workweek above forty hours."  ECF No. 71 at 8.  The evidence of record, however, reveals that Defendants' payment method does not comply with the FLSA.

It is undisputed that during the relevant time period, Defendants used the following shift schedule for their kitchen employees:

Monday–Thursday    10:30 a.m.–2:30 p.m. (morning shift)
                              4:00 p.m.–10:00 p.m. (afternoon shift)

| | |
|---|---|
| Friday | 10:30 a.m.–2:30 p.m. (morning shift) |
| | 4:00 p.m.–11:00 p.m. (afternoon shift) |
| | |
| Saturday | 10:30 a.m.–4:00 p.m. (morning shift) |
| | 4:00 p.m.–11:00 p.m. (afternoon shift) |
| | |
| Sunday | 11:00 a.m.–4:00 p.m. (morning shift) |
| | 4:00 p.m.–10:00 p.m. (afternoon shift) |

*Id.* at ¶ 44. Defendants require all of their employees to work both the morning and afternoon shifts on Fridays and Saturdays, *id*. at ¶ 43; ECF No. 59-3 at 69:2–19. On Saturdays and Sundays, there is no break between the morning and afternoon shifts, *id*. at ¶ 44. Defendants' kitchen employees generally worked five days per week, some worked six, and some worked four *Id.* at ¶ 42; ECF No. 59-5 at 67:24–69:1. Defendants admitted that they did not keep records of the kitchen employees' daily stop and start times before December 2017, *see* ECF No. 72 at ¶ 69, and Defendants did not require kitchen employees to clock in or out for their shifts, purportedly "because the undocumented employees required so." *Id.* at ¶ 70.

In responding to Plaintiff's Statement of Facts, Defendants made admissions regarding their employees' work schedules that show that many employees worked more than forty hours per week. To illustrate, Defendants admitted that they require their employees to work the morning and afternoon shifts on Friday and Saturday without a break. ECF No. 72 at ¶ 43. According to Defendants' shift schedule, every employee works 11 hours on Friday and 12.5 hours on Saturday. *See generally*, ECF No. 72 at ¶¶ 43–44. Defendants admitted that their employees generally work five days per week. *Id*. at 42. Viewing the facts in the light most favorable to Defendants, and assuming the other three days are the shortest shift days, Monday through Thursday, at 10 hours per day, a worker working the shortest number of hours for a 4-day work week would work 43.5

hours per week. That worker would be entitled to 3.5 hours of overtime premium and 40 hours of straight pay.

During his deposition, Yuan Zheng Xiao provided an example of how he accounts for overtime pay in the twice-monthly payments to kitchen employees:

> [For example], I pay a teriyaki chef $120 per day. He worked ten hours—ten hours a day. So here's how to calculate it. He works ten hours a day at $120 a day. I divide it by hours, and it's $10.97 per hour. If he works overtime, it will be $16.20 overtime pay. So $120 a day, I have it covered because it was way past—way beyond $7.25 minimum wage rate. So I take consideration of the industry standard, you know. So either it is for teriyaki chef, it is $120 or $120 per day.

ECF No. 59-5 at 29:11–21. Essentially, Defendant Yuan Zheng Xiao works backwards to calculate the hourly rate of the employees based on the day rate. *Id.*

For a hypothetical teriyaki chef making $120 per day given a single 10-hour day sample, Defendant Yuan Zheng Xiao's calculation does in fact result in straight time wages that are higher than the statutory minimum. However, based on the Defendants' Cash Logs, and personal interview statements by several of Defendants' employees regarding their paychecks (paid twice per month), there is no question that Defendants failed to pay their employees the required overtime premium at 1.5 times the regular rate of pay. *See* 29 C.F.R. § 778.112 (DOL interpretation setting forth method for calculating overtime premium for employees paid under day rate scheme); *see also Hickman v. TL Transp., LLC,* 318 F. Supp. 3d 718 (E.D. Pa. 2018) (giving deference to DOL overtime interpretation and applying provision). For example, a busser at Fusion Washington (whose identity has been redacted), works 63 hours per week yet Defendants pay him only $600 on the fourth day of the month and another $600 on the eighteenth day of the month. ECF No. 59-7 at 85. Even for a short month with only 28 days—exactly four weeks—the busser is compensated at approximately $4.77 per hour. Another employee, a kitchen cook, stated

in his personal interview that he works 62 hours per week and makes $1,000 every two weeks—averaging $8.07 per hour.  ECF No. 59-7 at 89.  Another employee, a "dishwasher/prep cook," alternates between working five and six days per week, but only makes $750 twice per month.  ECF No. 59-7 at 91.  One of the bussers at Fusion Vienna stated that he works between 65 and 70 hours per week and is paid only $700 twice per month. ECF No. 59-78 at 95–96.  A dishwasher at Fusion Vienna stated specifically that he did not get paid an overtime premium and that he works for 11.5 hours Tuesday–Thursday, 11 hours Friday–Saturday, and 11.5 hours Sunday for $850 twice per month.  ECF No. 59-7 at 105–06.  Working backwards from the twice monthly payments using the average hours worked, as Yuan Zheng Xiao suggested, these employees did not receive the minimum wage plus overtime premiums for the work they performed.  Furthermore, working backward from the amount Defendants paid their employees and then looking at the number of hours, results in a fluctuating rate of pay depending on the number of hours in a pay period.  Indeed, several other employees stated that they are paid the same amount regardless of the number of hours they work.  *E.g.*, ECF No. 59-7 at 86 (cook at Fusion Triadelphia);  *id.* at 87 (cook at Fusion Vienna);  *id.* at 103–04 (hibachi chef at Fusion Vienna).

Generally speaking, the plaintiff in an FLSA case bears "the burden of proving that [an employee] performed work for which he was not properly compensated."  *Sec'y U.S. Dep't of Labor v. Central Laundry, Inc*., 790 Fed.Appx. 368 (3d Cir. 2019*)* (internal citation omitted).  But, since that burden is harder to meet if the employer failed to maintain adequate records, "'rather than penalizing the employees by denying recovery based on an inability to prove the extent of undercompensated work,' the [Department of Labor] may 'submit sufficient evidence from which violations of the Act and the amount of an award may be reasonably inferred.'"  *Central Laundry*, 790 Fed.Appx. at 372 (quoting *Martin*, 949 F.2d at 1296–96).  As discussed more fully in the next

section, the Defendants in this case failed to maintain adequate records under the FLSA. Based on Defendants' admissions that they pay their kitchen employees a static amount twice per month regardless of the number of hours worked during the pay period, coupled with the employees' own statements and the Department of Labor's investigation findings as described above, no reasonable jury could conclude that Defendants paid their kitchen employees overtime in accordance with the FLSA. Therefore, the Court will grant summary judgment to Plaintiff that Defendants violated § 7(a) of the FLSA.

> **D.    Defendants Failed to Keep Employment Records Required by Section 11(c) of the FLSA**

Plaintiff seeks summary judgment that Defendants violated § 11(c) of the FLSA by failing to make, keep, and preserve employment records for their kitchen employees. ECF No. 60 at 12.

Under § 11(c) of the FLSA, employers must "make, keep, and preserve" accurate employment records. 29 U.S.C. § 211(c); *see Williams v. Tri-County Growers Inc.*, 747 F.2d 121, 127 (3d Cir. 1984); *Stewart v. Loving Kindness Healthcare Sys.*, Civil Action No. 2:20-cv-1087-RJC, 2021 U.S. Dist. LEXIS 280850, at *9 (W.D. Pa. Feb. 16, 2021). Sections 516.2(a) and 516.5(a) of the FLSA regulations require that every employer maintain and preserve for at least three years payroll or other records that contain 12 specifically enumerated items of information regarding each employee. Included in those 12 items are:

  a.  the employee's full name (§ 516.2(a)(1));

  b.  the employee's home address including zip code (§ 516.2(a)(2));

  c.  the employee's date of birth if the employee s under 19 years of age (§ 516.2(a)(3));

  d.  the employees' sex and occupation (§ 516.2(a)(4));

e.   the hours worked each workday and total hours worked each
workweek (§ 516.2(a)(7));

f.   the total daily or weekly straight-time earnings or wages due
for hours worked during the workday or workweek,
exclusive of overtime compensation (§ 516.2(a)(8));  and

g.   the total premium pay for overtime hours (§ 516.2(a)(9)).

*See* 29 C.F.R. § 516.2(a)(1)–(12).  At issue is Defendants' compliance with the FLSA between

October 18, 2014 and the present.  ECF No. 60 at 1;  ECF No. 1 at ¶ 9.  Defendants admitted in

their Response to Plaintiff's Statement of Facts in support of Summary Judgment that before 2017,

Defendants did not keep records of the full legal names, addresses, or dates of employment for

Hispanic workers because Defendants believed their names were too long and difficult to

remember.  ECF No. 72 at ¶ 72.  Furthermore, on June 22, 2015, Xiao Zhen "Jenny" Liang,

manager of Fusion Triadelphia, admitted in a letter to Assistant District Director Barron that she

threw away most of the receipts of payment that documented payments to employees:

> I tried to find the past receipt of payment so hard and I checked
> anywhere I can think. But I'm so sorry, most of them I think I throw
> them away already.  That's my big mistake.  I should keep them if I
> know they are so important.  All I can found (sic) I sent to you right
> now.

ECF No. 59-7 at 21.  Defendants did maintain and produce "Cash Logs" i.e., lists by twice-monthly

pay period of kitchen staff who were to receive cash payments.  *E.g.* ECF No. 59-7 at 41.  However,

Defendants' Cash Logs are inconsistent in the information they recorded and none of the Case

Logs satisfy the records requirements of § 516.2(a).  For example, none of the Cash Logs identified

the full name of each employee who received a cash payment, and several employees are listed

only by nickname rather than even their full first name.  *Id.*  Some of the Cash Logs list how much

each employee earned for the relevant pay period, *see e.g.,* ECF No. 59-7 at 53, and others do not,

*e.g.*, ECF No. 59-7 at 41.  None of the Cash Logs contain the employees' addresses, dates of birth,

sex, or occupation. Furthermore, § 516.2(a) requires employers to record employees' straight pay separately from overtime payments on a weekly basis. *See e.g., Acosta v. Revolutionary Home Health, Inc.*, Civil Action No. 3:17-cv-1992, 2020 U.S. Dist. LEXIS 71966, at *63 (M.D. Pa. Apr. 23, 2020) (granting summary judgment to the Plaintiff Department of Labor, that the defendants violated § 516.2(a) when they failed to keep records of the daily or weekly straight time and overtime earnings where the employer maintained records in two-week intervals). The Cash Logs list only a single lump sum indicating the twice-monthly payment—none of the Cash Logs differentiate between payments for straight time and premium time. *E.g.*, ECF No. 59-7 at 66. In short, Defendants' Cash Logs are deficient in many respects.

Defendants seek to explain their failure to record kitchen employees' weekly hours by asserting that it was not they who "refuse to keep the records and payroll for kitchen employees, rather the kitchen employees themselves refused to do so." ECF No. 71 at 9. This argument is unavailing. The duty to maintain and preserve time records is a non-delegable duty of employers. *See Dole v. Solid Waste Servs., Inc.*, 733 F.Supp. 895, 924 (E.D. Pa. 1989) ("It is well settled that the employer bears the burden of keeping accurate wage and time records, and that the duty cannot be delegated to employees."); *see* 29 U.S.C. § 211(c) ("Every *employer* . . . shall make, keep, and preserve such records of the persons employed by him . . ." (emphasis added)).

The record is clear that Defendants failed in their non-delegable duty to record the full names and addresses of all of their kitchen employees and failed to accurately record their hours and straight time and overtime payments by day or by week in accordance with 29 C.F.R. § 516.2(a). Therefore, no reasonable jury could conclude that Defendants met their obligations under 29 U.S.C. § 11(c) and the Court will enter summary judgment in Plaintiff's favor on this issue.

### E. Defendants Willfully Violated the FLSA's Overtime and Record Keeping Provisions

Plaintiffs seek summary judgment that Defendants acted willfully in violating the FLSA's overtime and recordkeeping provisions. ECF No. 60 at 14–18.

By enacting 29 U.S.C. § 255, Congress extended the statute of limitations for FLSA violations from two to three years where the violation was willful. *See Stone v. Troy Cosntr., LLC*, 935 F.3d 141, 148 (3d Cir. 2019). "Willful" means the defendant "knew or showed reckless disregard for the matter of whether its conduct was prohibited by the FLSA." *Acosta v. Heart II Heart, LLC*, Civil Action No. 2:17-cv-1242, 2019 U.S. Dist. LEXIS 178260, at *25 (W.D. Pa. Oct. 15, 2019); *see also*, *Stone*, 935 F.3d at 149 (willfulness is knowledge or recklessness). Generally, willfulness is a question of fact. *Bianchi Trison Corp. v. Chao*, 409 F.3d 55, 63 (3d Cir. 2005). However, the issue can be treated as a question of law where "'there is no legally sufficient evidentiary basis for a reasonable jury to find for' the non-moving party." *Souryavong v. Lackawanna Cty.*, 872 F.3d 122, 126 (3d Cir. 2017) (quoting *Rego v. ARC Water Treatment Co.*, 181 F.3d 396, 400 (3d Cir. 1999)).

Here, there is no room for a jury to find in Defendants' favor. It is undisputed that the United States Department of Labor's Wage and Hour Division investigated the Defendant Restaurants on three separate occasions prior to this case. ECF No. 72 at ¶¶ 91, 99, and 112. Each prior investigation revealed identical or nearly identical violations of the FLSA's overtime and recordkeeping provisions for which Defendants have paid penalties. ECF No. 72 at ¶ 91–122.

It is undisputed that the Wage and Hour Division investigated Fusion Triadelphia in August 2010 for violations of the FLSA that occurred between August 2009 and September 2010. ECF No. 72 at ¶ 91. It is also undisputed that the 2010 Triadelphia investigation revealed that

Defendants did not pay their employees the required overtime premium when they worked more than forty hours in a week during the investigation period; instead, Defendants paid their non-exempt hourly employees their straight-time rates for all hours worked, including overtime. *Id.* at ¶ 92. On October 12, 2010, the Wage and Hour Division sent a letter to Yuan Zheng Xiao informing him of Fusion Triadelphia's violation of § 7 of the FLSA "resulting from the failure to pay statutory overtime pay for hours worked in excess of 40 hours per work week. Specifically, your practice of paying non-exempt employees their straight time hourly rates of pay for all hours worked, including hours over 40 in various work weeks, resulted in the overtime violation." ECF No. 59-8 at 5. The October 12, 2010 letter also confirmed that Yuan Zheng Xiao participated in a conference with a Wage and Hour Division investigator, during which Yuan Zheng Xiao assured future compliance and agreed "to pay non-exempt employees time and one half their regular rates of pay for all hours worked in excess of 40 per workweek and to maintain accurate time and payroll records in compliance with Part 516 of 29 CFR." *Id.* The letter asked Yuan Zheng Xiao to confirm by return mail that he understood the contents of the letter and that it comported with his understanding of the agreement with the Wage and Hour Division. *Id.* at 6. Yuan Zheng Xiao signed and returned the letter on October 15, 2010. *Id.* at 3; *id.* at 7. Despite the undisputed fact that Yuan Zheng Xiao received, signed, and returned the DOL Wage and Hour Division's letter, Defendants now contend, in opposition to summary judgment (1) that Yuan Zheng Xiao was not given any instruction or communication from Plaintiff regarding violating the overtime provisions of the FLSA in connection with the 2010 Fusion Triadelphia investigation and (2) that he was only given a copy of the letter in English and "to his best understanding that (sic) the letter only spotted out the issue of paying 14 rather than 15 days." ECF No. 72 at ¶ 95–96 (citing Y. Xiao Dep., ECF No. 59-5 at 82:21–83:2, 86:18–87:17).

The parties do not dispute that the Wage and Hour Division investigated Fusion Washington in September 2011 for violations of the FLSA that allegedly occurred between January 2011 and December 2011. ECF No. 72 at ¶ 112. The parties also do not dispute that the investigation revealed that Defendants did not pay certain employees the required overtime premium when they worked more than forty hours per week, instead paying them straight time pay for all hours worked and paying salaries to some non-exempt employees for all hours without payment of additional overtime premiums. *Id.* at ¶ 113. It is undisputed that the investigation also revealed that Defendants did not accurately record the hours that employees worked each day; specifically, Defendants did not keep any records of the hours worked each workday and workweek for non-exempt salaried workers. *Id.* at ¶ 114. Yuan Zheng Xiao paid back wages to kitchen employees as a result of the 2011 investigation of Fusion Washington. ECF No. 72 at ¶ 121. The parties agree that at the end of this investigation of Fusion Washington, Yuan Zheng Xiao "agreed to comply with all provisions of the FLSA. Yuan Zheng Xiao and Fusion Washington agreed to keep accurate records of all employees' hours worked, to pay the additional half-time premium for hours worked over forty in a week to all non-exempt employees, and to pay full back wages totaling $9,619.85." ECF No. 72 at ¶ 117. Plaintiff contends that, as with the other investigations, the Wage and Hour Division sent Yuan Zheng Xiao a letter at the close of the 2011 investigation outlining the violations it uncovered and asking him to return the signed letter to confirm his understanding and agreement not to violate the FLSA in the future. ECF No. 72 at ¶¶ 118–19. Plaintiff contends that the letter enclosed a copy of the Division of Wage and Hour's "Handy Reference Guide to the FLSA." ECF No. 59-9 at 43–46. Yuan Zheng Xiao testified that he has no recollection[1] of the Wage and hour Division sending a letter advising him of the FLSA

---

[1] In their responses to paragraphs 100–106 and 118–119 of Plaintiff's Statement of Facts, ECF No. 72, Defendants stated that "Defendants Yuan Zheng Xiao stated that he 'has no collection on it[,]'" and "Defendants Yuan Zheng

violations in November 2012. ECF No. 72 at ¶¶ 118–19; ECF No. 59-5 at ¶ 92:1–6. However, Plaintiff included a copy of the November 29, 2012 letter to Yuan Zheng Xiao that bears Defendant Xiao's signature in support of its Motion for Partial Summary Judgment. ECF No. 59-9 at 43.

It is undisputed that the Wage and Hour Division investigated Fusion Vienna in February 2012 for FLSA violations that allegedly occurred between March 2010 and March 2012. ECF No. 72 at ¶ 99. On November 29, 2012, the Wage and Hour Division sent a letter to Defendant Yuan Zheng Xiao explaining that "[t]he investigation disclosed overtime violations of the FLSA resulting from: paying employees their straight time rate for overtime hours worked; and [p]aying salaried non-exempt employees a salary for all hours worked without additional half-time for hours worked over forty in a week." ECF No. 59-9 at 8. The November 29, 2012 letter enclosed a copy of the FLSA's "Handy Reference Guide to the Fair Labor Standards Act," ECF No. 59-9 at 10, and, like the Wage and Hour Division's letter from the Fusion Washington investigation, asked Yuan Zheng Xiao to sign and return the letter to confirm his receipt and understanding. ECF No. 59-8 at 9. Plaintiff attached a copy of the November 29, 2012 letter bearing Defendant Yuan Zheng Xiao's signature in support of its Motion for Partial Summary Judgment. ECF No. 59-9 at 8. During his deposition, Yuan Zheng Xiao claimed to have no recollection of the Fusion Vienna investigation or its results. ECF No. 59-5 at 92:1–6 and 93:20–25. Despite Yuan Zheng Xiao's lack of recollection, Defendants admit in their Responses to Plaintiff's Statement of Facts, that Yuan Zheng Xiao sent the signed confirmation letter to the Wage and Hour Division and paid $1,122.00 in civil monetary penalties. ECF No. 72 at ¶¶ 110–111.

---

Xiao testified that he had no collection on that." (sic) citing page 92 lines 1–6of Defendant Yuan Zheng Xiao's deposition. At page 92, line 6 of Defendant Yuan Zheng Xiao's deposition, he stated "I don't have any recollection," not "collection" as Defendants' response indicates. For purposes of the parties' cross motions for summary judgment, the Court will consider the use of "collection" in Defendants' responses to paragraphs 100–106 and 118–119 of Plaintiff's Statement of Fact, ECF No. 72, to mean "recollection" to conform with the original testimony, ECF No. 59-5 at 92:1–6.

Three prior Wage and Hour Division investigations, each of which undisputedly revealed identical or nearly identical violations of the FLSA's overtime and recordkeeping requirements, occurred prior to the events which gave rise to this litigation. ECF No. 72 at ¶¶ 91–122. At the conclusion of each investigation, Yuan Zheng Xiao signed a letter from the Wage and Hour Division confirming his understanding of the violations and his agreement to comply with the FLSA's provisions moving forward. ECF No. 72 at ¶¶ 97, 107, 117, 120. Plaintiff produced copies of the letters it sent to Yuan Zheng Xiao after each investigation, and the letters detail the FLSA violations and several even included a copy of the FLSA's "Handy Reference Guide to the FLSA," which covers the requirements for overtime premiums and recordkeeping. *See e.g.,* ECF No. 59-9 at 10.

Defendants argue that the prior investigations do not render their actions in this case willful for several reasons: (1) because the Wage and Hour Division only sent the letter in English, a language in which Yuan Zheng Xiao is not fluent, ECF No. 72 at ¶¶ 96–98; (2) because Yuan Zheng Xiao testified at his deposition that the Wage and Hour Division never provided him with instruction or communication on a violation of the overtime premium in connection with the 2010 Triadelphia investigation, ECF No. 72 at ¶ 93–95; and (3) because he has no recollection that the 2012 Fusion Vienna investigation revealed violations of the overtime and recordkeeping requirements of the FLSA, or of the correspondence from the Wage and Hour Division explaining the violations discovered in the 2012 Fusion Vienna and 2012 Fusion Washington investigations, ECF No. 72 at ¶¶ 100–105, 118–119.

The only evidence Defendants cite to support their argument are excerpts from Yuan Zheng Xiao's deposition. *See* ECF No. 72 at ¶¶ 91–122. The general rule that "conclusory self-serving affidavits are insufficient to withstand a motion for summary judgment," *Gonazales v. Sec'y of the*

*Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012), has been extended to self-serving deposition testimony. *See Irving v. Chester Water Auth.*, 439 Fed.Appx. 125, 127 (3d Cir. 2011)*; see also Hanna v. Giant Eagle Inc.*, Civil Action No. 15-1009, 2017 U.S. Dist. LEXIS 34699, at *39–40 (Mar. 6, 2017). At summary judgment, the ultimate question is whether self-serving testimony, "when considered in conjunction with other evidence, is sufficient for a rational factfinder to credit [the declarant's] testimony, in spite of the testimony's self-serving nature." *Hanna*, 2017 U.S. Dist. LEXIS 34699, at *40; *see Scott v. Harris*, 550 U.S. 372, 380 (2007) (When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of facts for the purposes of ruling on a motion for summary judgment."); *Gonzales*, 678 F.3d at 263; *Irving*, 439 Fed.Appx. at 127 ("In light of both his earlier testimony and other record evidence, [plaintiff's] self-serving deposition testimony is insufficient to raise a genuine issue of material fact.").

Here, the Court finds that Defendant Yuan Zheng Xiao's self-serving deposition testimony, when considered alongside the other evidence in the case, cannot create a genuine issue of material fact regarding willfulness. As of October 2014, when the first of the alleged FLSA violations in this case occurred, Defendants acted knowingly, or at the very least recklessly, in violating the FLSA. Undisputedly, prior to October 2014, Defendant Yuan Zheng Xiao and his restaurants had been investigated by the United States Department of Labor's Wage and Hour Division three separate times. Each investigation revealed identical or nearly identical violations of the FLSA's overtime and recordkeeping provisions, and at the conclusion of each investigation, the Wage and Hour Division's letters outlining the violations were returned to the Division with Yuan Zheng Xiao's signature affixed, and Defendants paid penalties for the violations.

Perhaps Yuan Zheng Xiao's asserted lack of fluency in English could have accounted for Defendants' first violation of the FLSA. However, after three separate investigations, three almost identical sets of FLSA violations, confirmations of understanding of the violations, and payment of three rounds of civil penalties, no reasonable jury could find that Yuan Zheng Xiao's asserted lack of fluency negates willfulness, particularly since Defendants did not make the effort to consult with the Department of Labor or an attorney for advice on their lack of compliance with the FLSA. ECF No. 59-4 at ¶ 24. Nor can Defendant Yuan Zheng Xiao's deposition testimony asserting that he did not receive "instruction or communication" on a particular violation, or that he does not recall the 2012 FLSA violations, create a genuine issue of material fact regarding willfulness. Plaintiff provided record evidence of multiple letters to Yuan Zheng Xiao that enclosed the Wage and Hour Division's "Handy Reference Guide to the FLSA." *See e.g.*, ECF No. 59-9 at 10. It is undisputed that his signature also appears on the October 10, 2012 letter from the Wage and Hour Division to Fusion Triadelphia that discussed the violations of the FLSA uncovered by the 2010 Fusion Triadelphia investigation. ECF No. 59-8 at 7. The undisputed record evidence reflects that Yuan Zheng Xiao's signature appears on Plaintiff's November 12, 2019 letters to Fusion Vienna and Fusion Washington discussing the results of the Wage and Hour Division's respective investigations and which enclosed the Handy Reference Guide. ECF No. 59-9 at 8, 43; ECF No. 72 at ¶¶ 107, 120. Notwithstanding Yuan Zheng Xiao's self-serving testimony that he has no recollection of and did not receive some of the letters from the Wage and Hour Division about past investigations, no reasonable jury could find in Defendants' favor that they were not at least reckless in their violations of the FLSA here. The Court will grant Plaintiff's Motion for Partial Summary Judgment that Defendants' FLSA violations were willful.

### F.  Plaintiff is Entitled to Liquidated Damages

Plaintiff seeks summary judgment that it is entitled to liquidated damages under § 16(c) of the FLSA.  Defendants' Brief in Opposition to Plaintiff's Motion for Summary Judgment does not address liquidated damages.  *See generally*, ECF No. 71.

Section 216 of the FLSA permits the Secretary of Labor to recover unpaid wages and an additional equal amount of liquidated damages for violations of § 7 of the FLSA.  29 U.S.C. § 216(c);  *Am. Future Sys.*, 873 F.3d at 433.  Liquidated damages under § 16(c) are compensatory and they "ease the hardship endured by employees who were deprived of lawfully earned wages." *Am. Future Sys.*, 873 F.3d at 433.  Liquidated damages are mandatory unless the employer shows that it acted in good faith with reasonable grounds to believe that it was not violating the FLSA. *Id.*;  *Blan v. Classic Limousine Transp.*, Civil Action No. 9-87, 2021 U.S. Dist. LEXIS 59239, at *24 (W.D. Pa. Mar. 29, 2021).  "Double damages are the norm, single damages are the exception." *Blan*, 2021 U.S. Dist. LEXIS 59239, at *24 (quoting *Solis v. A-1 Mortg. Corp.*, 934 F.Supp.2d 788, 814 (W.D. Pa. 2013)).  The employer's good faith is a subjective inquiry that "requires that the employer have an honest intention to ascertain and follow the dictates of the Act."  *Williams v. Tri-County Growers, Inc.*, 747 F.2d 121, 129 (3d Cir. 1984).  By contrast, the reasonableness of the employer's grounds for believing it was complying with the Act is an objective inquiry.  *Blan*, 2021 U.S. Dist. LEXIS 59239, at *24 (citing *Marshall v. Burner*, 668 F.2d 748, 753 (3d Cir. 1982)).  "To prove good faith, an employer must show that it took affirmative steps to ascertain the FLSA's requirements but violated the provisions anyway."  48B Am. Jur. 2d Labor and Labor Relations § 3393 *Standards for court's discretion in awarding liquidated damages* (2021);  *see also*, *Souryavong*, 872 F.3d at 125.

There is no genuine issue of material fact that Defendants did not take affirmative steps to ascertain the FLA's requirements. Despite three prior investigations and violations for identical or nearly-identical violations of the FLSA's overtime and recordkeeping requirements, Defendants did not consult the Wage and Hour Division, any governmental or regulatory body, outside counsel, or inside counsel to determine whether their compensation of their kitchen staff complied with the FLSA. ECF No. 59-4 at ¶ 24. Defendants' Brief in Opposition is silent on liquidated damages and did not provide any details regarding Defendants' attempts to ascertain the requirements of the FLSA. No reasonable jury could find that Defendants met their "plain and substantial burden" to show they are entitled to relief from liquidated damages. *See Am. Future Sys.*, 873 F.3d at 433. Therefore, the Court will grant Plaintiff summary judgment that it is entitled to liquidated damages.

### G.     Defendants will be Enjoined from Future FLSA Violations

Plaintiff seeks summary judgment enjoining Defendants from future violations of the FLSA. ECF No. 60 at 20. Defendants' Brief in Opposition to Plaintiff's Motion for Partial Summary Judgment is silent on Plaintiff's request for an injunction. *See generally*, ECF No. 71.

Section 217 of the FLSA grants federal district courts jurisdiction, for cause shown, to restrain violators of the FLSA from committing future violations. 29 U.S.C. § 217. "Whether to grant an injunction is within the court's sound discretion." *Solis v. A-1 Mortg. Corp.*, 934 F.Supp.2d 778, 815 (W.D. Pa. 2013) (citing *Mitchell v. Lublin, McGaughy & Assocs*, 385 U.S. 207, 215 (1959) and *Dole v. Haulaway Inc.*, 723 F.Supp. 274, 288 (D.N.J. 1989), *aff'd*, 914 F.2d 242 (3d Cir. 1990)); *Heart II Heart, LLC*, 2019 U.S. Dist. LEXIS 178260 at *30. Courts consider several factors in deciding whether to issue an injunction under § 217, including the employer's past and current conduct and "most importantly, whether the employer can be counted on to

comply with the FLSA in the future." *Solis*, 934 F.Supp.2d at 815 (citing *Reich v. Petroleum Sales, Inc*., 30 F.3d 654, 657 (6th Cir. 1994)).

"Where the Secretary has established violations of the Act, the district court should ordinarily grant injunctive relief, even if the employer is in present compliance, unless the district court is soundly convinced that there is no reasonable probability of a recurrence of the violations." *Marshall v. Van Matre*, 634 F.2d 1115, 1118 (8th Cir. 1980). As the United States Court of Appeals for the Fifth Circuit has stated: "The issuance of a permanent injunction in FLSA cases does not subject an employer against whom it runs to a penalty or hardship since it requests him to do what the Act requires anyway—to comply with the law." *Dunlop v. Davis*, 524 F.2d 1278, 1281 (5th Cir. 1975).

Three previous Wage and Hour Division investigations uncovered Defendants' history of violating the FLSA in identical or nearly identical ways, as Plaintiff alleges in this case. It is undisputed that Yuan Zheng Xiao is the incorporator, president, and co-owner of the Restaurant Defendants, ECF No. 1 at ¶ 5; ECF No. 15 at ¶ 5; ECF No. 72 at ¶ 7, and that he paid the Wage and Hour Division civil money penalties in connection the three previous Wage and Hour investigations. ECF No. 72 at ¶¶ 98, 111, and 122. Defendants admit in their Response to Plaintiff's Statement of Facts that in November 2012, at the conclusion of the investigation into Fusion Washington, Yuan Zheng Xiao agreed to comply with all provisions of the FLSA. ECF No. 72 at ¶ 117. Defendants specifically admit that, at that time, they "agreed to keep accurate records of all employees hours worked, pay the additional half-time premium for hours worked over forty in a week to all non-exempt employees, and to pay in full backwages[.]" *Id*.

It is not reasonably disputable that the Defendants have serially violated the FLSA. Even if they are currently complying with the requirements of the Act, their word that they will continue

to comply is called into serious doubt by their established history of promising compliance and then returning to practices that violate the FLSA.  Therefore, as in *Solis*, 934 F.Supp.2d at 815, the Court finds that the Plaintiff has shown cause why Defendants should be enjoined from violating the FLSA in the future under § 17.  Rather than penalizing Defendants, the injunction will serve as a reminder to Defendants of the importance of continuing to uphold its obligations under the FLSA.

## IV.    Defendants' Motion for Partial Summary Judgment will be Denied

Defendants seek summary judgment that certain employees are exempt from the overtime requirements of the FLSA because they qualify for the executive exemption under 29 U.S.C. § 213(a)(1).  ECF No. 62 at 4–14.  Plaintiffs argue that the executive exemption is an affirmative defense which Defendants waived by failing to include the defense in their responsive pleadings. ECF No. 70 at 2.

Section 213(a)(1) of the FLSA exempts employees who are employed in a "bona fide executive, administrative, or professional capacity" from the overtime provisions of the FLSA.  29 U.S.C. § 213(a)(1);  *see e.g., Dooley v. CPR Restoration & Cleaning Servs.*, *LLC*, 591 Fed.Appx. 74 (3d Cir. 2014).  The executive exemption under § 213(a)(1) also applies to "any employee who owns at least a bona fide 20-percent equity interest in the enterprise in which the employee is employed, regardless of whether the business is a corporate or other type of organization, and who is actively in its management."  29 C.F.R. § 541.101.

FLSA exemptions such as the executive exemption under § 213(a)(1) are considered affirmative defenses and the burden is on the defendant to establish them.  *Jones v. Giant Eagle, Inc.*, 2:18-cv-00282-DSC, 2019 U.S. Dist. LEXIS 142135, at *9 (W.D. Pa. Aug. 20, 2019).  The Federal Rules of Civil Procedure are clear that affirmative defenses must be pled in the first

responsive pleading. Fed. R. Civ. P. 8(c)(1) ("In responding to a pleading, a party must affirmatively state any avoidance or affirmative defense[.]").

Failing to raise an affirmative defense in the first responsive pleading is against the requirements of Rule 8, but it is not necessarily fatal. *See e.g.*, *Berrada v. Cohen*, Case No. 16-cv-574 (SDW)(LDW), 2018 U.S. Dist. LEXIS 165897 (D.N.J. Sept 27, 2018). The United States Court of Appeals for the Third Circuit has not yet ruled on the precise issue of whether the affirmative defense of an FLSA exemption is waived if it is not specifically pled in the answer. *Boyington v. Percheron Field Servs., LLC*, 2017 U.S. Dist. LEXIS 184991, at \*10–11 (W.D. Pa. Nov. 8, 2017); *See also, Schmidt v. Eagle Waste & Recycling, Inc.*, 599 F.3d 626 (7th Cir. 2010); *Bergquist v. Fid. Info.* Servs., 197 Fed.Appx 813 (11th Cir. 2006). That said, courts have permitted defendants to utilize an affirmative defense that they did not plead in their responsive pleading if the opposing party was on fair notice of the defendants' intent to pursue the affirmative defense. *See e.g.*, *Antiskay v. Contemporary Graphics & Bindery, Inc.,* Civil No. 11-7579, 2013 U.S. Dist. LEXIS 180323, at \*11–12 (D.N.J. Dec. 26, 2013) (permitting defendant to assert an FLSA exemption at summary judgment stage despite not specifically pleading it because plaintiff was put on notice of the defense given that answer stated several times that the defendant believed plaintiff was an exempt employee.).

Here, Defendants specifically raised 23 affirmative defenses in their Answer to the Complaint but they did not include the affirmative defense of exemptions under the FLSA. ECF. No. 15. On September 20, 2020, more than a year after answering the Complaint, and after the close of discovery, *see* ECF No. 50, Defendants moved to amend their Answer to raise the affirmative defense that certain employees are exempt from the FLSA under § 213. ECF No. 51.

The Honorable Cathy Bissoon, then the presiding judge, denied Defendant's motion to amend their Answer "on the grounds of undue delay and unexcused delay." ECF No. 58.

Because Defendants did not specifically raise the affirmative defense of exemptions, their ability to assert them now depends on whether Plaintiff had sufficient notice. Nowhere in Defendants' Answer, including its 23 pleaded affirmative defenses, do the words "exempt," non-exempt," or "exemption" appear. ECF No. 15. Though Defendants explicitly cited specific statutory provisions to support their affirmative defenses, *see id.* at ¶ 10 (citing 29 U.S.C. § 255 in support of their tenth affirmative defense), Defendants did not cite § 213(a)(1)'s exemption provision. *Id.* Plaintiff's written discovery requests asked Defendants to:

> Describe separately in detail (identifying where applicable, any and all documents used in answering this inquiry or which relate to or provide support of such affirmative defense) each and every factual basis you rely upon in support of any contention and/or statement contained in any of the affirmative defenses or denials in Defendants' Answer.

ECF No. 59-3 at ¶ 11. Defendants responded: "Defendants object to this interrogatory to the extent it is vague and overbroad. Notwithstanding, Defendants refer to the documents provided and document requests for each factual basis Defendants rely upon." *Id.*

Plaintiff's discovery requests also asked Defendants to identify all the individuals and entities with ownership interests in the Restaurant Defendants by percentage and dates of ownership, ECF No. 59-3 at ¶ 15, information that is relevant to a potential executive exemption under § 213(a)(1) and 29 C.F.R. § 541.101. Furthermore, Plaintiff's discovery requests asked Defendant to identify the individuals responsible for hiring, firing, disciplining, supervising the work of employees, assigning work, scheduling work—all of which are relevant to a potential executive exemption under § 213(a)(1), *see* 29 C.F.R. § 541.100; *Itterly v. Family Dollar Stores, Inc.*, 606 Fed.Appx. 643, 645–46 (3d Cir. 2015). ECF No. 59-3 at ¶¶ 5, 12.

After a review of the record, the Court finds that material issues of fact remain as to whether Plaintiff was on notice of Defendants' FLSA exemptions affirmative defense. Despite Defendants' failure to plead, reference, or allude to the executive exemption as an affirmative defense in its Answer, Plaintiffs did allocate several of its not unlimited discovery requests to issues that bear on a potential executive exemption. *See e.g.*, ECF No. 59-3. However, whether Plaintiff was on notice of Defendants' intent to argue the affirmative defense of executive exemption is a question for the jury. The Court will deny Defendants' Motion for Partial Summary Judgment.

## V.    Conclusion

For the foregoing reasons, the Court will GRANT Plaintiff's Motion for Partial Summary Judgment, ECF No. 59, and DENY Defendants' Motion for Partial Summary Judgment, ECF No. 61.

An appropriate order will follow.


DATED this 12th day of July, 2021.


BY THE COURT:


/s/ Christy Criswell Wiegand
CHRISTY CRISWELL WIEGAND
United States District Judge


cc (via ECF email notification):

All Counsel of Record